# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 08-35189-11-SGJ |
| | § | |
| **THREE STROKES LIMITED** | § | |
| **PARTNERSHIP** | § | (Chapter 11) |
| | § | |
| Debtor. | § | |

## EMERGENCY MOTION OF CONSECO, INC. REQUESTING ENTRY OF AN ORDER DECLARING THAT THE AUTOMATIC STAY DOES NOT APPLY TO CERTAIN FORECLOSURE PROCEEDINGS OR, ALTERNATIVELY, GRANTING RELIEF FROM THE AUTOMATIC STAY AND WAIVING THE APPLICATION OF BANKRUPTCY RULE 4001(a)(3)

COMES NOW Conseco, Inc. ("Conseco"), as a party-in-interest in the above-captioned proceeding, by and through its undersigned counsel, and hereby files this Emergency Motion Requesting Entry of an Order Declaring that the Automatic Stay Does Not Apply To Certain Foreclosure Proceedings or, Alternatively, Granting Relief From the Automatic Stay and Waiving the Application of Bankruptcy Rule 4001(a)(3) (the "Motion"). By this Motion, Conseco seeks an order pursuant to Section 105 of the United States Bankruptcy Code ("Bankruptcy Code") and this Court's inherent powers, declaring that, as a matter of law, the automatic stay provisions of section 362 of the Bankruptcy Code (the "Automatic Stay") do not apply to the non-judicial foreclosure proceedings previously commenced in Arizona (the "Foreclosure Proceedings") respecting that certain property development located at 19400 N. 59th Avenue, Glendale, Arizona (the "Arizona Property"), in which Conseco has a first lien, security interest and Three Strokes Limited Partnership, the Debtor and Debtor-in-Possession herein (the "Debtor"), has a second lien interest which has no value, and authorizing Conseco to

enforce its first lien and proceed with the Foreclosure Proceedings. Alternatively, should this Court rule that, as a matter of law, the Automatic Stay does apply to the Foreclosure Proceedings, Conseco respectfully asks this Court pursuant to Section 362(a) of the Bankruptcy Code, to enter an order lifting the Automatic Stay and allowing the Foreclosure Proceedings to go forward, and waiving the application of Federal Rule of Bankruptcy Procedure 4001(a)(3) ("Rule 4001(a)(3)"). In support of this Motion, Conseco respectfully represents as follows:

## PRELIMINARY STATEMENT

This bankruptcy proceeding is an eleventh hour attempt by the Debtor – which is an out of the money holder of a second lien on the Arizona Property -- to subvert Conseco's right as a first lien holder to foreclose on such property. The Arizona Property is owned by a third party that is not in Chapter 11, and thus the Automatic Stay does not apply to Conseco's Foreclosure Proceedings.

The Debtor is a small family owned investment company with no operating facilities or business, which claims in its Schedules to have only 6 unsecured creditors holding a total of $23,336.79 of unsecured debt. The fact that the Debtor filed its Chapter 11 protection less than 24 hours before the scheduled foreclosure sale was to take place, coupled with its counsel's statement that the Debtor "unequivocally" takes the position that the Automatic Stay bars Conseco from proceeding with the Foreclosure Proceedings, strongly suggests that the Debtor's reason for filing for Chapter 11 protection was not to reorganize, but, rather, to attempt to impede Conseco in enforcing its first lien rights.

Conseco believes that, as a matter of law, because the Arizona Property is not owned by this estate, the Automatic Stay does not apply to the Foreclosure Proceedings

respecting such property. However, in deference to the Court, rather than proceed with the scheduled foreclosure sale, Conseco has brought this Motion seeking the Court's approval to proceed with the Foreclosure Proceedings.

As explained in more detail herein, Citadelle at Arrowhead Ranch, LLC ("Citadelle") is the owner of the Arizona Property, which is a retail/office mixed used facility, the development of which was financed principally by a $28,600,000 loan (the "Loan") from Conseco that is secured by a first lien on such property. See ¶3 of the Affidavit of James Klusmeier, sworn to October 10, 2008, and submitted in support hereof (the "JK Aff"). Citadelle is a Arizona limited liability company, and its equity/membership units are owned by two entities – Arrowhead Pointe, Inc. ("Arrowhead") and Bean Premier, LLC ("Premier"). Id. at ¶¶16-17.

Notably, 100% of Arrowhead's stock is owned by the Debtor. In connection with a financial transaction between Arrowhead and Premier – which has resulted in a bitter dispute between them that has led to a stalemate in the operation and future direction of Citadelle – a pledge agreement was executed that purports to grant Premier a security interest in the Arrowhead stock owned by the Debtor. Id. at ¶¶16-17.

The operations of Citadelle are governed by an Operating Agreement (the "Operating Agreement") between Arrowhead and Premier, and such agreement prohibits Arrowhead, as the managing member, from commencing bankruptcy proceedings on Citadelle's behalf without the consent of Premier, as the so-called "Special Member". Id. at ¶17.

In early 2008, Citadelle defaulted on Conseco's Loan, and Conseco thereafter commenced the Foreclosure Procedures. Id. at ¶11. In an effort to attempt a financial

3

restructuring of Citadelle with its equity holders, Conseco has voluntarily adjourned the date of the scheduled foreclosure sale numerous times from its originally scheduled date of August 19, 2008, through the most recent scheduled date of October 8, 2008. Id. at ¶12. Unfortunately, owing to the internecine disputes between Arrowhead and Premier, the management of Citadelle is deadlocked and thus no agreement can be reached on the restructuring of Conseco's Loan. Additionally, it appears that Premier will not provide Arrowhead, as the managing member, with its consent to allow Citadelle to file for Chapter 11 or 7 protection. See Ex. A to the Declaration of Thomas Kent, Esq., sworn to on October 10, 2008, and submitted in support hereof (the "TK Aff").

Accordingly, on October 7, 2008, Conseco's counsel informed Citadelle's counsel that in view of Citadelle's inability to restructure its debt, Conseco was going forward with the then scheduled foreclosure sale on October 8th. Id. at ¶3. The fact that within hours thereafter the Debtor filed its Chapter 11 petition, speaks volumes about the tactical purpose behind this filing. Id. at ¶4. It is clear that when Arrowhead could not get its "warring" equity partner Premier to agree to have Citadelle file for Chapter 11 protection and thereby stay the Foreclosure Proceedings, it resorted to using the Debtor -- which is under common control with Arrowhead -- to try to achieve the same result.

Unfortunately for Arrowhead, neither the law nor the facts provide a basis for the imposition of the Automatic Stay. As demonstrated herein, as a matter of law, because the Arizona Property is not property of the estate, the Automatic Stay does not apply to prevent the foreclosure sale.

LEGAL_US_E # 81157439.1

Furthermore, even assuming, <u>arguendo</u>, that the Automatic Stay were held to apply, cause exists here to compel the lifting of the stay because:

(i)  as a result of the declining real estate and financial markets, the value of Conseco's collateral will not be adequately protected if it can not foreclose; and

(ii) the Debtor's second lien interest is considerably out of the money, and thus it has no equity in such property and, correspondingly, such interest can not be used by it to reorganize.

For the reasons set forth above and herein, Conseco's Motion should be granted.

## <u>JURISDICTION AND VENUE</u>

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This Motion raises a core matter under 28 U.S.C. § 157(b)(2).  Venue of these cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## <u>STATEMENT OF FACTS</u>

On or about September 26, 2006, 40|86 Mortgage Capital, Inc. ("<u>40|86 Capital</u>"), made the Loan to Citadelle in the amount of up to $28,600,000.00.  JK Aff at ¶3.  The purpose of the Loan was to fund the construction of a 108,556 square foot retail/office mixed use facility located on a 9.956 acre site in the northwest corner of 59th Avenue and Utopia Road, Glendale, AZ 85308.  <u>Id</u>. at ¶3.

LEGAL_US_E # 81157439.1

The Loan is evidenced by a Promissory Note, dated September 26, 2006, in the principal amount of $28,600,000.00 (the "Note"), executed by Citadelle as maker, in favor of 40|86 Capital as payee and holder of the Note. Id. at ¶3.

The Note is secured by, among other things a Deed of Trust, Assignment of Rents and Security Agreement, dated as of September 26, 2006, encumbering the Property, together with the building, structures, improvements, furniture, fixtures, equipment and personal property pertaining to or affixed thereon, by a first priority lien as recorded in the Official Records of Maricopa County on September 27, 2006, as Recorder's No. 2006-1274832 (the "Deed of Trust"). Id. at ¶5.

The Note also is secured by an Assignment of Leases and Rents executed on September 25, 2006, and recorded on September 27, 2006, at Recorder's No. 2006-1274847, in the office of the County Recorder of Maricopa County, Arizona (the "Assignment of Rents"). Id. at ¶6. As a further inducement for the making of the Loan, Albert Paul Stephens, Jr. ("Stephens") executed a Limited Guarantee (the "Guarantee"). Id. at ¶7.

The Note, Deed of Trust, and Assignment of Rents were assigned by 40/86 Capital to Bankers Life and Casualty Company, Conseco Life Insurance Company, Colonial Penn Life Insurance Company, Conseco Senior Health Insurance Company and Washington National Insurance Company (collectively, the "Intermediate Assignees") as evidenced by the Assignment (the "September 26th Assignment"), executed on September 26, 2006, and recorded on October 23, 2007, at Recorder's No. 2007-1148295, in the Office of the County Recorder of Maricopa County, Arizona. Id. at ¶8.

6

The Note, Deed of Trust, and Assignment of Rents were subsequently assigned by the Intermediate Assignees to Conseco, Inc. as evidenced by the Agreement of Sale and Assignment (the "September 30th Assignment") executed on September 30, 2008, and recorded on October 2, 2008, at Recorder's No. 2008-0855386, in the Office of the County Recorder of Maricopa County, Arizona. Id. at ¶9.

To meet certain obligations under a side letter agreement, on or about April 7, 2007, Citadelle and the Intermediate Assignees entered into an Escrow Agreement and First Amendment to Loan Agreement (the "First Amendment"). In conjunction therewith, Citadelle caused to be deposited $2,497,585.00 into an escrow account. As set forth in the Escrow Agreement, upon an "event of default" (as defined in Deed of Trust), the escrow funds could be applied in accordance with the payment provisions set forth in the Note. Id. at ¶10.

Thereafter, Citadelle defaulted under its obligations under the Note, Deed of Trust, Assignment of Rents and other related Loan agreements (the "Defaults"). Consequently, the Intermediate Assignees commenced a non-judicial Foreclosure Proceedings by filing a Notice of Trustee's Sale and Disposition of Personal Property dated May 20, 2008 (the "Foreclosure Notice"), which Foreclosure Notice was recorded on May 20, 2008, at Recorder's No. 200-0447266, in the Office of the County Recorder of Maricopa County, Arizona. Id. at ¶11.

Pursuant to the Foreclosure Action, an initial sale (the "Sale") of the Property was scheduled on August 19, 2008. To allow additional time for Citadelle to possibly cure the Defaults (the "Settlement Discussions"), the Intermediate Assignees (and subsequently Conseco, Inc.) agreed to a series of continuances of the Sale. In connection with the Settlement

Discussions, the Intermediate Assignees engaged CB Richard Ellis ("CBRE") to conduct an appraisal of the market value of the Property. Id. at ¶12. In the CBRE report dated July 29, 2008 (the "CBRE Report"), CBRE opined that as of July 3, 2008, the Property had an appraised value of $25,000,000. See ¶12 of Affidavit of Thomas J. Rottkamp, sworn to on October 10, 2008, and submitted in support hereof (the "TR Aff").

Contemporaneously with the Foreclosure Action, the Intermediate Assignees also commenced an action in the Superior Court for the State of Arizona, in and for the County of Maricopa (the "Arizona Court") , for the appointment of a receiver. JK Aff at ¶11. Subsequently, the Arizona Court appointed Eagle Commercial Realty Services as receiver. Id. at ¶13.

Following the failure to arrive at a satisfactory resolution of the Defaults, counsel to Conseco advised Citadelle's counsel that Conseco would not adjourn the Sale of the Arizona Property scheduled for October 8, 2008. TK Aff at ¶3. Within just a few hours, counsel for Conseco was advised that Three Stokes Limited Partnership had filed a voluntary Chapter 11 petition (the "Petition") that commenced this proceeding. Id. at ¶4. The Petition is signed by Paul Stephens, in his capacity as Pres. of Stephens Land Co., Gen. Partner. Upon information and belief, Paul Stephens is the same person as Stephens, and he directly or indirectly, has equity interests in Debtor.

Upon information and belief, Debtor holds a note executed by Citadelle in favor of Debtor in the principal amount of $1,900,000, which note is secured by a junior second lien in the Property. JK Aff at ¶5. Upon learning of the Petition on the eve of the Sale of the Arizona Property, Counsel for Conseco enquired and was advised by Debtor's counsel that Debtor would

8

consider Conseco's continuation of the Sale without first obtaining an order of this Court lifting

the Automatic Stay to be a violation thereof.  TK Aff at ¶3.

Upon information and belief, Stephens is also the manager and, directly or

indirectly, has equity interests in Citadelle.  JK Aff at ¶16.  Upon information and belief,

Citadelle could not file a petition in bankruptcy because of proscriptions in the Operating

Agreement.  Id. at ¶16.

**BASIS FOR RELIEF**

I.  **THE AUTOMATIC STAY DOES NOT APPLY TO A FORECLOSURE
ACTION ON PROPERTY HELD BY A NON-DEBTOR IN WHICH
DEBTOR HOLDS AN UNSECURED JUNIOR CLAIM**

Section 362(a) of the Bankruptcy Code provides:

Except as provided in subsection (b) of this section, a petition filed under
section 301, 302, or 303 of this title….operates as a stay, applicable to all
entities, of-
(1) the commencement or continuation, including the issuance or
employment of process, of a judicial, administrative, or other action or
proceeding *against the debtor* that was or could have been commenced
before the commencement of this case under this title, or to recover a
claim *against the debtor* that arose before the commencement of the case
under this title….
(3) any act to obtain possession of the *property of the estate* or of property
from the estate or to exercise control over property of the estate. (emphasis
added).

11 U.S.C.A. § 362(a).

The Bankruptcy Code provides that the filing of a petition results in an automatic

stay of certain actions in order to relieve the financial pressures that caused the debtor to seek

bankruptcy relief. *Fidelity & Deposit Co. of Md. and Colonial America Casualty and Surety Co.*

*v. Tri-Lam Co., Inc., Valdemar Rios, Jr. and T.G. Services*, 2007 U.S. Dist. Lexis 26293 (W.D.

Tex. April 9, 2007). By its terms, the Automatic Stay applies only to debtors, and it is well

settled that such protection does not generally extend to co-debtors or non-debtor third parties. *Id.; see also, Reliant Energy services, Inc. v. Enron Canada Corp.*, 291 B.R. 687 (S.D. Tex. 2002).

Even though the Debtor does not own the Arizona Property that is the subject of the Foreclosure Proceedings, on the basis of its second lien on such property it claims that the Automatic Stay bars Conseco, as the first lien holder, from foreclosing on the Arizona Property. The Debtor's argument is contrary to law.

Section 541 of the Bankruptcy Code defines what constitutes property of the debtor's estate. Section 541 provides that: Such an estate is comprised of . . . all legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C.A. § 541.

In *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198 (1983), the Supreme Court in reviewing Section 541(a)(1), expressly stated that the legislative history of this section "indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title." *Id.* at 204, n. 8 (emphasis added). Because a junior lien does not make the underlying property "property of the estate" for the purposes of Section 541(a)(1), it necessarily follows that a Chapter 11 filing by the junior lien holder does not result in the Automatic Stay applying to the underlying property.

The court in *Farmers Bank v. March (In re March)*, 140 B.R. 387 (Bankr. E.D. Virginia 1992), aff'd, 988 F.2d 498 (4th Cir. 1993), reached precisely this conclusion in holding that the Chapter 11 proceeding of a junior lien holder does not result in the Automatic Stay preventing the senior lien holder from foreclosing on the underlying property. In *Farmers Bank*, Lloyd March filed for Chapter 11 protection in the Bankruptcy Court for the Eastern District of

Virginia in late 1991. Earlier that year, Stockbridge Funding Corp. was placed into an involuntary Chapter 7 proceeding which was then converted to a Chapter 11 case in the Bankruptcy Court for the Southern District of New York. Farmers Bank held a first-priority deed of trust in two parcels of real estate located in Virginia and owned by a third party non-debtor. March and Stockbridge each held junior liens on the parcels. Farmers sought to commence state law foreclosure proceedings on the parcels, and in order to gain assurance that the foreclosure would not violate the automatic stay, moved in the Virginia bankruptcy proceeding for relief from the automatic stay and, alternatively, for a declaration that the stay did not apply to the foreclosure.

March did not contest Farmers' motion, thus the bankruptcy court lifted the stay, and dismissed as moot Farmers' request for declaratory relief against March. However, the bankruptcy court dismissed Farmers' request for declaratory relief against Stockbridge, holding that it did not have jurisdiction over the SDNY bankruptcy proceedings. Farmers appealed to the Virginia District Court. The District Court held that it had jurisdiction pursuant to 28 U.S.C. § 1334(d). With regard to Farmers' assertion that the foreclosure proceedings were not barred by the automatic stay, the Court stated that "the dispositive issue is whether the property owned by a nondebtor becomes property of the bankrupt estate because the debtor holds junior liens on the property." *Farmers*, 140 B.R. at 388. The court, citing *United States v. Whiting Pool, Inc.*, at 204, n.8., then reversed the bankruptcy court's dismissal of Farmer's request for a declaration that the Automatic Stay does not apply to its foreclosure, and held that the non-judicial foreclosure by Farmers was not barred by the stay and could proceed.

The court in *In re Le Peck Constr. Corp.*, 14 B.R. 195 (Bankr. E.D.N.Y. 1981), similarly ruled that a junior lien holder's Chapter 11 filing did not result in the automatic stay

applying to a senior lien holder's foreclosure proceeding. *In Le Peck*, Le Peck filed a Chapter 11 petition in mid-1980. Le Peck continued to operate as a debtor in possession and in that capacity continued to perform work for Holy Cross Church on a building subject to a mortgage given to Lincoln Bank. A dispute arose between Le Peck and the church, and Le Peck stopped working and initiated a breach of contract suit and filed a mechanic's lien. Sometime thereafter, Lincoln Bank sought to initiate foreclosure proceedings against Holy Cross and, in connection therewith, applied to the bankruptcy court for an order for leave to join and serve LePeck as a necessary party. LePeck opposed Lincoln's application, maintaining that Lincoln could only secure the relief it sought through an adversary proceeding in the bankruptcy court and further, that the automatic stay provision of section 362 applied to the foreclosure proceedings. The bankruptcy court disagreed and held that section 362 was inapplicable and an adversary proceeding unwarranted because a "proceeding to foreclose on a mortgage primarily concerning two strangers to the bankruptcy proceeding … belongs in the local courts, not in the bankruptcy court." *In re Le Peck Constr. Corp.*, 14 B.R. 195, 196 (Bankr. E.D.N.Y. 1981); see also, *In re Holiday Lodge, Inc.*, 300 F.2d 516 (7th Cir. Ill. 1962) (holding, in a pre-Bankruptcy Code case, that the bankruptcy court was not permitted to restrain a senior secured creditor from foreclosing a mortgage on real property that was subject to a lease held by the debtor, because the debtor had no interest in the real estate); *Cf. Texas & N.O.R. v. Phillips,* 211 F.2d 419,421 (5th Cir. 1954) (holding, in a pre-Bankruptcy Code case, that a bankruptcy referee did not have jurisdiction over a railroad's reversionary interest in premises leased by the debtor because bankruptcy jurisdiction requires actual possession at the time of bankruptcy, and in such case the bankrupt's "possession" was a purely legal concept that could only manifest itself if certain legal consequences took place).

LEGAL_US_E # 81157439.1

The conclusion that, as a matter of law, the Chapter 11 proceeding of a junior lien holder does not result in the application of the automatic stay to a senior lien holder's foreclosure proceeding, is also compelled by other fundamental tenets of a debtor's property rights.[1]  It is hornbook law that the property rights of a debtor-in-possession are subject to the same conditions, restrictions and limitations that attached to those property rights under state law prior to the commencement of the Chapter 11 proceeding.  5 Collier on Bankruptcy, (15th Ed. Revised), ¶ 541.04, pg. 541-12, 13.  Any limitation that applied to the debtor's property rights prior to the bankruptcy case, equally limit such rights when they become property of the estate in a bankruptcy proceeding.  *Id.*; *see also Keller v. Keller (In re Keller)*, 185 B.R. 796, 800-01 (9th Cir. BAP 1995) (property of the debtor that was subject to reserved jurisdiction of the state family court prior to the debtor's bankruptcy proceeding, remained subject to modification by the state court during the debtor's bankruptcy proceeding).

The Debtor's second lien rights have always been subject to Conseco's senior first lien rights.  As a matter of contract and applicable state law, the owner of a junior lien is in possession of an interest that is subject to the exercise of rights by the senior lien holder, and the corresponding impact of such exercise on the junior lien.  In agreeing to accept a second lien, the

---

[1] But see, *In re Bibo*, 200 B.R. 348 (9th Cir. BAP 1996) (holding that a debtor's interest as a junior lienholder may preclude a senior lienholder from foreclosing, absent relief from the automatic stay).   Although the Bibo court went on to lift the automatic stay so that the senior lienholder could in fact foreclose, its rationale for concluding that the automatic stay even applied in the first place is fundamentally flawed.  The court stated that since the effect of the foreclosure on the first lien is a "foreclosure" on junior liens as well, such an act by a senior lender is an exercise of "control over property of the estate" and thus in violation of section 362(a)(3) of the Bankruptcy Code.  Such an analysis fails to recognize that the subordinated nature of a junior lien is an inherent limitation of such a property right -- it is what every junior lien holder understands it is getting (and how it is being limited) when it agrees to accept such a property right.  The consequential lack of value to the junior lien as a result of a foreclosure, is due to the contractual limitations of a junior lien and the state statutes that govern them, and not any extraordinary act on the part of the senior lien holder.  The outcome is no different than the proper enforcement, in a bankruptcy case of a junior creditor, of a senior creditor's subordination rights, and the law is clear in the Fifth (and other) Circuits that subordination agreements are enforceable in Chapter 11.  *In re Terrace Gardens Park Partnership*, 96 B.R. 707, 716 (Bankr. W.D. Texas 1989).

Debtor, like any other junior lien holder, knowingly took possession of a property right that could become liquidated and/or extinguished by the exercise of Conseco's first lien rights and the effect of same under applicable Arizona law. The fact that the Debtor now has an estate in Chapter 11 does not alter the very nature of what it means under contract law and applicable Arizona statutes to have a junior lien.

To hold that the filing for bankruptcy by a junior lien holder results in the application of the Automatic Stay to a senior lien holder's foreclosure proceeding, would lead to inequitable results which, as noted by the Supreme Court in *U.S. v. Whiting Pools*, were clearly not intended by Congress in enacting section 362(a). Indeed, this case presents a striking example of the incongruous and unfair outcome that would result if the Court were to rule that the Debtor's filing results in a stay of Conseco's Foreclosure Proceedings.

It can not be gainfully contested that the Debtor's second lien is out of the money. CBRE's appraisal in July showed the Arizona Property to be worth only $25 million – more than $3 million less than Conseco's debt – and the acute stress in the markets since such time unfortunately assures that the Debtor is even further out of the money today. It is also clear that Mr. Stephens, who through Arrowhead is one of the two equity holders of Citadelle, commenced this proceeding only because he was contractually barred from putting Citadelle into Chapter 11.

Using Chapter 11 as a litigation tool or other tactical weapon is not the purpose of the statute. And such an inappropriate use is even more unseemly when the value of the junior lien holder's stake in the property being foreclosed is zero. To broaden the application of the Automatic Stay to cases like this, would be to invite other out of the money junior lien holders to improperly attempt to thwart the rights of senior creditors.

14

Moreover, numerous cases which have addressed the application of the Automatic Stay to non-debtor parties -- whether they be guarantors or co-debtors -- emphasize that allowing a non-debtor to receive the benefit of the Automatic Stay is a dramatic measure because it deprives creditors of the benefit of their bargain and allows a non-debtor a major benefit of the bankruptcy process without being subject to any of its benefits or burdens. *In re National Staffing Services*, LLC, 338 B.R. 35 (Bankr. N.D. Ohio 2005), *see also*, *Class Five Nev. Claimants v. Dow Corning Corp*, 280 F.3d 648 (6th Cir.); *see also*, *McMahon v. George Mason Bank*, 94 F.3d 130 (4th Cir. 1996).

## II.    ALTERNATIVELY, IF THIS COURT HOLDS THAT THE STAY IS APPLICABLE, THEN CAUSE EXISTS FOR RELIEF FROM THE AUTOMATIC STAY

Alternatively, as set forth herein, and as will be presented at any hearing on this Motion, cause exists to terminate the Automatic Stay.

### A.    No Adequate Protection

Section 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court *shall grant relief from the stay* provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay- (1) *for cause*, including the lack of adequate protection…. (emphasis added).

11 U.S.C. § 362(d)(1).

Cause is not defined by the Bankruptcy Code.  Various factors may be considered, some of which include: (i) an interference with the bankruptcy, (ii) good or bad faith of the debtor, (iii) injury to the debtor and other creditors if the stay if modified, (iv) injuries to the movant if the stay is not modified, and (v) the portionality of the harms from modifying or continuing the stay. *In re Tirey Distributing Co*., 242 B.R. 717 (Bankr. E.D. Ok. 1999).    In this

case, all of these factors militate in favor of finding that cause to lift the stay exists: (i) and (iii) the Debtor's second lien is out of the money and thus of no utility by the Debtor or any other creditor; (ii) the Debtors's purpose in filing its Petition appears to have been tactical; and (iv) due to the tremendous downward stress in the financial and real estate markets, Conseco faces considerable prejudice if it is delayed in foreclosing.

Cause exists when collateral is deteriorating in value. *United Sav. Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370 (1988); *In re Consolidated Industries Corp.*, 330 B.R. 227, 233 (Bankr. N.D. Ill. 2001) (holding that the court should terminate the automatic stay to "staunch the flow of blood" and allow creditors to minimize any loss). Conseco seeks to foreclose on the Arizona Property because the value of the Arizona Property has, and continues to, deteriorate precipitously.

The case law is clear that since Conseco has a prima facie case that the Debtor owes an obligation to Conseco, that it has a valid security interest that it is seeking to protect, and that cause exists justifying the relief, it is proper for relief from the automatic stay to be granted. *In re 15375 Memorial Corporation*, 382 B.R. 652, 686 (Bankr. D. Del. 2008) (holding that when the moving party makes a prima facie case, the burden shifts to the party opposing the relief on all issues).

**B.      Since there is no equity interest in the property, it is thus not necessary for the reorganization of the estate.**

Under section 362(d)(2) of the Bankruptcy Code, the Bankruptcy Court must grant relief from the Automatic Stay if "(A) the debtor does not have an equity interest in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. 362(d)(2). *See also In re Sutton*, 904 F.2d 327 (5th Cir. Tex. 1990) (affirming the district court's

judgment that lifted the automatic stay to allow bank creditor to foreclose on property in which the debtor had no equity interest and which was not necessary to an effective reorganization); *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 370 (5th Cir. Tex. 1987) ("holding that §362(d)(2) entitles a secured creditor to obtain relief from the automatic stay in order to foreclose on collateral when the debtor does not have an equity in such collateral" and "such collateral is not necessary to an effective reorganization"); *In re Northwest Timberline Enters.*, 348 B.R. 412, 429 (Bankr. N.D. Tex. 2006) (granting a creditor's motion for relief from the automatic stay to foreclose on properties in which the debtors had no equity interest); *In re A. Partners, LLC*, 344 B.R. 114 (Bankr. E.D. Cal. 2006) (granting motion for relief from stay where debtor had no equity in the property).

Once a court finds that the debtor-in-possession has no equity in the property at issue, it becomes the Debtor's burden of proof to establish that the property is necessary to an effective reorganization. "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective organization *that is in prospect*." *United Sav. Assn. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988) (emphasis in original). This means that there must be a "reasonable possibility of a successful organization within a reasonable time." *Id.* at 376 (citation omitted).

As previously noted, the Debtor's second lien in the Arizona Property is out of the money. See TR Aff Ex. B. As such, it is axiomatic that such a valueless interest could not be of any assistance to the Debtor in promulgating a plan of reorganization.

**C.      The ten day appeal period for an order granting relief from stay, should be waived.**

Rule 4001(a)(3) provides that:

An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise.

Fed. R. Bank. Proc. 4001(a)(1).

Conseco respectfully requests that should this Court hold that relief from the Automatic Stay is appropriate, the Court exercise its discretion and enter an order waiving the ten day appeal period so that Conseco can avoid further risk of diminution in value arising from the present, acutely stressed market conditions.

WHEREFORE, Conseco respectfully requests that this Court issue an order holding that, as a matter of law, the Automatic Stay does not apply to the Foreclosure Proceedings, and authorizing Conseco to proceed with such proceedings and exercise its first lien rights. In the event that the Court holds that, as a matter of law, the Automatic Stay does apply to the Foreclosure Proceedings, then Conseco respectfully requests that this Court issue an order lifting the Automatic Stay as it applies to Conseco, waiving the application of Rule 4001(a)(3), and granting such other relief as the Court deems just and proper.

This 10th day of October, 2008

/s/ Bryan J. Wick
Bryan J. Wick
Texas State Bar No. 24003169
Brant C. Martin
Texas State Bar No. 24002529
Kerry C. Peterson
Texas State Bar No. 24012195
WICK PHILLIPS, LLP
2100 Ross Avenue, Suite 950
Dallas, Texas 75201
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
E-mail: bryan.wick@wickphillips.com
         brant.martin@wickphillips.com
         kerry.peterson@wickphillips.com

LEGAL_US_E # 81157439.1

- and -

Anthony Princi (AP 2150)
Thomas Kent
State Bar No.
PAUL, HASTINGS, JANOFSKY & WALKER, LLP
Park Avenue Tower
Sixth Floor
New York, NY 10022
Telephone: (212) 318-6690
Facsimile: (212) 230-7698
E-mail:  anthonyprinci@paulhastings.com
            thomaskent@paulhastings.com

ATTORNEYS FOR CONSECO, INC.

19

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Bankruptcy Rule 9014.1, I hereby certify that counsel for Conseco conferred with counsel for the Debtor regarding this motion and addressing the position of the Debtor regarding the request for expedited relief. Counsel for the Debtor is opposed to the relief sought herein.

/s/ Kerry C. Peterson
Kerry C. Peterson

LEGAL_US_E # 81157439.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 10, 2008, I caused the foregoing motion to be served via transmission of Notice of Electronic Filing generated by the Court's CM/ECF system upon all parties registered to receive Notices of Electronic Filing in these cases, and by overnight mail to the Creditors Holding 20 Largest Unsecured Claims identified by the Debtor in its Petition.

/s/ Bryan J. Wick
Bryan J. Wick

LEGAL_US_E # 81157439.1