

**U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**Signed December 1, 2008**             **United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THREE STROKES LIMITED | § | CASE NO. 08-35189-SGJ-11 |
| PARTNERSHIP, | § | |
| | § | |
| D E B T O R. | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND RULING ON MOTION OF CONSECO, INC. REQUESTING ORDER DECLARING THAT THE AUTOMATIC STAY DOES NOT APPLY TO CERTAIN FORECLOSURE PROCEEDINGS OR, ALTERNATIVELY, GRANTING RELIEF FROM THE AUTOMATIC STAY

The following constitutes the court's findings of fact, conclusions of law and ruling in connection with a motion to lift stay filed by Conseco, Inc. on October 10, 2008. The court reserves the right to supplement or amend these findings of fact and conclusions of law. The court has jurisdiction in this

matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

## FINDINGS OF FACT

1. The Debtor, an entity known as Three Strokes Limited Partnership (the "Debtor"), filed its voluntary Chapter 11 bankruptcy petition on October 7, 2008.

2. Almost immediately thereafter, Conseco, Inc. ("Conseco," which will sometimes be referred to herein, interchangeably with prior holders of the promissory note Conseco now holds, as the "First Lien Lender") filed a motion to lift stay.

3. The Conseco motion to lift stay asks the court to determine that the automatic stay of Section 362 of the Bankruptcy Code does **not** apply to certain non-judicial foreclosure proceedings commenced prepetition by the First Lien Lender, regarding certain real property located at 59th Avenue and Utopia Road, in Glendale, Maricopa County, Arizona (hereinafter, the "Arizona Property"). In the alternative, Conseco argues that there is "cause" to lift the stay, pursuant to Section 362(d), to allow Conseco's foreclosure proceedings to go forward on the Arizona Property.

4. Conseco, as earlier alluded to, is the first lienholder on the Arizona Property.[1] The Debtor is a second lienholder on (and not the owner of) the Arizona Property.

5. The Arizona Property is actually owned by Citadelle at Arrowhead Ranch, LLC ("Citadelle"), an entity that is not in bankruptcy. Citadelle is an Arizona limited liability company, and its membership units are owned by two entities: Arrowhead Pointe, Inc. ("Arrowhead Pointe") and Bean Premier, LLC ("Bean Premier"). In turn, 100% of the stock of Arrowhead Pointe is owned by the Debtor (and is subject to a pledge to Bean Premier). There have been corporate governance disputes recently between Arrowhead Pointe and Bean Premier regarding such things as attempts to restructure the Conseco loan. Arrowhead Pointe apparently cannot commence a bankruptcy for Citadelle without Bean Premier's consent.

6. In any event, the Arizona Property is a retail/office mixed-use facility (with approximately 100,000 square feet on a 9.956 acre site), the development of which was financed principally by a $28,600,000 construction loan dated September

---

[1] The court notes that there may be taxing authorities with liens ahead of the consensual liens on the Arizona Property. By use of the term "first lienholder," the court means a first-in-priority contractual or consensual lien.

26, 2006.  The construction loan was evidenced by, among other documents, a Promissory Note, dated September 26, 2006, executed by Citadelle, as maker, and in favor of an entity known as 40/86 Mortgage Capital Inc., as payee and holder of the note.  This note will hereinafter be referred to as the "First Lien Note."  The First Lien Note was assigned to certain entities, as intermediate assignees, and then was subsequently assigned by the intermediate assignees to Conseco, pursuant to an Agreement of Sale and Assignment executed on September 30, 2008 and recorded on October 2, 2008.  The First Lien Note is secured by not only a first lien on the Arizona Property, but also by rents and various other personal property pertaining thereto.  It is also guaranteed by an individual named Albert Paul Stephens, Jr.  Mr. Stephens is a principal of Citadelle.  Mr. Stephens also signed the voluntary petition of the Debtor as President of the general partner of the Debtor.

    7.   Citadelle defaulted on the First Lien Note in early 2008, and Conseco and/or prior holders of the First Lien Note commenced foreclosure proceedings (the originally scheduled foreclosure date was August 19, 2008 and the most recently scheduled foreclosure date was October 8, 2008).  The Debtor filed bankruptcy on the eve of foreclosure.

8. An appraisal on the Arizona Property, conducted July 29, 2008 by CB Richard Ellis, indicates that the Arizona Property was worth $25,000,000 (as is) or $27,700,000 (as if stabilized) in July 2008 and an Affidavit of Thomas Rottcamp, who was involved with and signed the Appraisal, indicates his belief that the value may have declined some since July, as a result of the weak economy. Conseco asserts that it was owed $29,648,571.66 by Citadelle, as of November 7, 2008, plus possibly other interest and fees. Thus, Conseco, through affidavits, appears to have made a prima facie case of the Debtor having no equity with respect to its second lien interest in the Arizona Property.

9. The Debtor asserts that it holds a promissory note in the amount of $1,992,643, dated September 26, 2006, executed by Citadelle in favor of the Debtor, and secured by second lien on the Arizona Property. This second lien is not disputed by Conseco, for purposes of its motion to lift stay.

10. The Debtor and the original First Lien Lender entered into an "Intercreditor Subordination Agreement" on September 26, 2006. In such agreement, the Debtor agreed to such things as the following: that its right to payment on its second lien note was subordinated to the payment of the entirety of the First Lien Note; that the Debtor's lien was subordinate to that of the First

Lien Lender; that any distribution of assets that the Debtor might receive in the event of Citadelle's insolvency or bankruptcy should be remitted to the First Lien Lender until the obligations owing to the First Lien Lender were paid in full; that the Debtor waived any requirement that the First Lien Lender obtain the Debtor's consent or give the Debtor notice before proceeding with collection activity (such as foreclosure) against Citadelle; and that the Debtor gave the First Lien Lender the power to act as attorney-in-fact for the Debtor in efforts to collect on the Debtor's claims against Citadelle.  The court takes judicial notice that the Intercreditor Subordination Agreement seems fairly typical and is not particularly exotic or overreaching.  The Intercreditor Subordination Agreement makes clear that the Debtor's right to payment from Citadelle and rights in Citadelle's assets, including the Arizona Property, are in all ways subordinate to the First Lien Lender until the First Lien Lender has been satisfied in full.

    11.  The Debtor refutes, through affidavits, the amount of indebtedness that Conseco asserts is owing to it by Citadelle, suggesting that it is more than $1,000,000 overstated.  The Debtor also refutes the valuation espoused in Conseco's supporting affidavits, arguing a much higher value is realistic

for the Arizona Property, utilizing a stabilized net operating income approach to value the property.

## CONCLUSIONS OF LAW AND RULING

In addressing Conseco's motion to lift stay, the court must first reach the initial question of whether the automatic stay even applies to protect the Debtor's second lien interest in the Arizona Property.

With regard to this initial question, the Debtor argues, as a procedural matter, that an adversary proceeding is needed to resolve this initial question. The court disagrees. The court has before it a simple question of law concerning the applicability of Section 362 to an act—*i.e.,* foreclosure. The requirement of Bankruptcy Rule 7001(9) that a proceeding to obtain a declaratory judgment must be brought as an adversary proceeding is not applicable here. Specifically, not all requests for a determination of a legal issue in a bankruptcy case require an adversary proceeding. Bankruptcy Rule 7001(9) only speaks to requests for declaratory judgment relating to items (1)-(8) of Bankruptcy Rule 7001. But a simple request for a determination as to the applicability of the automatic stay is not governed by Bankruptcy Rule 7001(9).

Now, turning to the merits of the question of the

applicability of the automatic stay, the court holds that the second lien of the Debtor in this Arizona Property is, indeed, a property interest that triggers the protection of the automatic stay. It is a property interest as contemplated under Section 541 of the Bankruptcy Code. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983) ("The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property . . . .") (citing legislative history of Section 541). To reiterate, the Arizona Property itself is certainly **not** property of the estate, but the second lien interest of the Debtor in that property **is** a property interest worthy of recognition and protection. Thus, Section 362 applies to automatically stay the foreclosure proceedings. The foreclosure proceedings could have the effect of extinguishing the Debtor's second lien interest. The foreclosure proceedings would constitute an exercise of control over property of the estate, pursuant to Bankruptcy Code Section 362(a)(3). The court recognizes that the automatic stay is generally a tool to stop **creditor** collection efforts, and Conseco is not a creditor of this Debtor. However, Section 362(a) is worded to prevent "all entities" (not merely creditors) from engaging in certain acts

including "an act . . . to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Clearly, Section 362(a)(3) is intended to prevent dismemberment of the estate and allow a breathing spell for a debtor-in-possession.

The court relies mainly on two opinions from the Fifth Circuit in reaching this conclusion. The first is the *Westec* opinion. *Florida Institute of Tech. v. Carpenter (In re Westec Corp.)*, 460 F.2d 1139, 1142 (5th Cir. 1972).

In *Westec*, which was a Chapter X reorganization case under the prior Bankruptcy Act, the Fifth Circuit held that the estate's first and second mortgages on real estate constituted "property" interests under the jurisdiction of the bankruptcy court and, thus, certain taxing authorities' foreclosure proceedings as to underlying real property violated the automatic stay in the case. The taxing authorities should have sought relief from the stay in the bankruptcy court before proceeding. *See In re Westec Corp.*, 460 F.2d at 1143 (in referring to the first and second mortgage on the real estate in question, the Fifth Circuit stated, "Certainly, this interest constitutes 'property' within the meaning of Sections 111 and 148 of the Bankruptcy Act, as 'property' can constitute something other than fee ownership").

The second opinion that this court found significant is the *Chestnut* case. *In re Chestnut*, 422 F.3d 298, 303 (5th Cir. 2005). In *Chestnut*, the Fifth Circuit upheld the original bankruptcy court holding that a creditor's foreclosure on real property that was believed by the creditor to be the separate property of the nondebtor spouse of the debtor, but was subject to an unresolved argument that it was, in fact, community property of the debtor and nondebtor and, thus, potentially property of the debtor's estate, was violative of the automatic stay. The court reiterated that the automatic stay's provisions must be interpreted broadly and applied to any "arguable" property. *In re Chestnut*, 422 F.3d at 303 (noting that the breadth of the automatic stay "suggests Congressional intent that, in the face of uncertainty or ambiguity, courts should presume protection of arguable property").

The parties have cited various opinions that are arguably more analogous to the case at bar than perhaps *Westec* and *Chestnut,* and that go both ways on this issue. *See, e.g.*, *Farmers Bank v. March (In re March)*, 140 B.R. 387 (Bankr. E.D. Va. 1992), *aff'd*, 988 F.2d 498 (4th Cir. 1993) (district court held that the automatic stay triggered by the Chapter 11 case of a junior lien holder did not prevent the senior lien holder from

foreclosing on the underlying property; court indicated that automatic stay is designed to protect **debtors** and a second lienholder is a **creditor** with respect to the property involved; Fourth Circuit affirmed on procedural grounds without reaching issue of applicability of automatic stay); *In re Le Peck Constr. Corp.*, 14 B.R. 195 (Bankr. E.D.N.Y. 1981) (bankruptcy court held that the automatic stay of a Chapter 11 debtor which possessed a postpetition mechanic's lien for postpetition work it performed on a building did not preclude a senior lien holder's foreclosure on the building); *In re Holiday Lodge, Inc.*, 300 F.2d 516 (7th Cir. 1962) (in a case under the Bankruptcy Act, Seventh Circuit held that the bankruptcy court could not restrain a senior secured creditor from foreclosing a mortgage on real property that was subject to a lease held by the debtor because the debtor had no interest in the real property). *But see In re Capital Mortgage & Loan, Inc.*, 35 B.R. 967 (Bankr. E.D. Ca. 1983) (holding that a senior lien holder's cancellation of a loan to third party trustors and taking of a quitclaim deed from the trustors in lieu of foreclosure violated the automatic stay of the junior lien holder, who was a debtor in bankruptcy); *Cardinal Industries, Inc. v. Buckeye Federal Sav.& Loan Ass'n (In re Cardinal Industries, Inc.)*, 105 B.R. 834 (Bankr. S.D. Ohio 1989)

(finding that the debtor's unrecorded second mortgage interest became property of the estate upon the debtor's bankruptcy filing and protected by the automatic stay from the first mortgage holder's foreclosure of its lien); *In re Fidelity Mortgage Investors*, 550 F.2d 47 (2d Cir. 1976) (court held that the bankruptcy of a holder of a junior deed of trust stops foreclosure by a senior lien holder).  After reviewing this authority, the court believes that the correct legal answer is that there is a cognizable property interest here, *vis-a-vis* the Debtor's second lien in the Arizona Property, that the automatic stay protects.

In reaching this holding, the court has focused carefully on one particular nuance in this fact pattern that is of some significance.  That nuance is the fact that the Debtor and the First Lien Lender are (and have been for more than two years) parties to the Intercreditor Subordination Agreement.  The court believes that a legitimate question is presented here as to whether the Intercreditor Subordination Agreement essentially creates a waiver or relinquishment of the Debtor's property rights, *vis-a-vis* the second lien, so that the Debtor really has no meaningful property interests left.  In other words, has the Debtor, by contractually subordinating its second lien and

significant rights associated therewith, given up what would have ordinarily been a Section 541 property interest? The court thinks not—at least not with the Intercreditor Subordination Agreement, as worded in this case. While the Debtor has clearly subordinated itself to the rights of Conseco, *vis-a-vis* the Arizona Property, and the right to payments on its second lien loan from Citadelle, and while Section 510 of the Bankruptcy Code dictates that the Intercreditor Subordination Agreement is in all ways enforceable in this bankruptcy case (to the same extent enforceable under applicable nonbankruptcy law), this does **not** mean that the Debtor has no property right here at all worthy of protection. The subordination agreement certainly dilutes or weakens the Debtor's bundle of rights associated with the second lien. But it does not extinguish the property rights altogether. While, certainly, the spirit of this and of all subordination agreements is that the second lienholder must await its fair share after the First Lien Lender is satisfied in full, the fact is that nothing in this particular subordination agreement prevents the Debtor from exercising the rights it has, by filing its bankruptcy petition, and at least slowing down the foreclosure sale.

Lastly, having determined that the automatic stay applies in

the case at bar, the court finally turns to whether there is "cause" to lift the stay. The affidavits submitted in this matter show that there are disputed issues of fact regarding exactly how much is owed by Citadelle to Conseco and whether there is any equity here for the Debtor—*i.e.,* whether this second lien interest is worth anything at all, and whether the second lien interest is necessary to the Debtor's (as opposed to Citadelle's) reorganization. The case law from the Fifth Circuit instructs that "necessary to an effective reorganization" means there must be a reorganization that is reasonably in prospect for the Debtor—not simply a pipe dream. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 370-71 (5th Cir. 1987), aff'd, 484 U.S. 365 (1988) ("Courts have consistently construed [Section] 362(d)(2)(B) to require a showing by the debtor that there is a reasonable possibility of a successful reorganization within a reasonable time. The mere indispensability of the property to the debtor's survival and the debtor's hopes of reorganization are insufficient to justify continuation of the stay when reorganization is not reasonably possible.") This court believes it must hear live evidence as to the issues of equity and the reorganization prospects of the Debtor, and regarding adequate protection before it can assess

whether there is "cause" to lift the stay. The affidavits create some genuine disputed issues and the court cannot rule on the affidavits alone. The affidavits go to some of these germane issues, but they significantly contradict each other, so live witnesses are needed on these issues.

The stay will be continued and the motion to lift stay is set for final evidentiary hearing on **Monday, December 15, 2008, at 10:00 a.m.**

**IT IS SO ORDERED.**

**\*\*\*\* END OF FINDINGS OF FACT, CONCLUSIONS OF LAW AND RULING \*\*\*\***